**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
--------------------------------------------------------------x

*In re:* Case No. 25-35888-KYP

Chapter 7

**MAGICSOFT GROUP, INC.,**
*Debtor.*

--------------------------------------------------------------x

**GABRIEL BAR SHANY,**
**SHANI BAR,**
**BELLA COHEN,**
**ARON BERLIN, and**

Adversary Proceeding No.

Plaintiffs,

v.

**JENNIFER SAFKEN and**

**CHRISTOPHER SAFKEN,**
**EMMA A. PASCUAL, ESQ.,**
**JOHN R. SUTTON, ESQ.,**
**SUTTON POMARES LAW GROUP, P.A.,**
**CHRIS TINSLEY,**
**AHUVA GAMLIEL,**
**JOSHUA H. EGGNATZ, ESQ.,**
**MICHAEL J. PASCUCCI, ESQ., and**

**EGGNATZ | PASCUCCI,**
Defendants.

--------------------------------------------------------------x

**COMPLAINT FOR VIOLATION OF AUTOMATIC STAY,**
**DECLARATORY RELIEF, AND SANCTIONS**

## PRELIMINARY STATEMENT

This adversary proceeding exposes a brazen, coordinated assault on the automatic bankruptcy stay by multiple creditors and their attorneys. Plaintiffs Gabriel Bar Shany, Shani Bar, and Bella Cohen bring this action under 11 U.S.C. § 362 to enforce the automatic stay, obtain declaratory relief, and seek compensatory and punitive sanctions against Defendants who have deliberately and repeatedly violated federal bankruptcy law despite actual knowledge and explicit warnings.

Defendants' egregious violations have left Plaintiffs no choice but to file this adversary proceeding. As creditors of the debtor holding valid contractual indemnification claims against the bankruptcy estate, each Plaintiff has been forced to undertake this action to protect their individual rights from Defendants' predatory litigation tactics. Defendants' deliberate disregard for the automatic stay does not merely harm Plaintiffs—it strikes at the very foundation of bankruptcy law by undermining the orderly administration of the estate, disrupting the equal treatment of all creditors, and depleting estate assets that rightfully belong to all creditors, not just these aggressive violators.

Defendants' conduct is not inadvertent—it is calculated, deliberate, and defiant. Despite actual notice of the August 17, 2025 bankruptcy filing—expressly acknowledged by filing proofs of claim—Defendants and counsel deliberately continued prosecuting state court litigation in flagrant violation of the automatic stay. This is not oversight—it is willful contempt of federal bankruptcy law.

The attorney Defendants' conduct is particularly egregious and indefensible. As licensed members of the Florida Bar with superior knowledge of bankruptcy law and ethical obligations, these attorneys had an absolute duty to inform state courts of the bankruptcy filing and automatic stay. Instead, they deliberately concealed this information from the state courts, actively prosecuted discovery and motions, sought default judgments, and continued their assault on the estate—all while knowingly violating federal law. This constitutes fraud upon the court.

This coordinated misconduct exhibits every hallmark of willful violation requiring substantial sanctions. The Second Circuit has held that willful violations occur when creditors act with knowledge of the automatic stay and commit intentional acts in violation thereof, and critically, no specific intent to violate the stay is required. In re Chateaugay Corp., 920 F.2d 183, 186 (2d Cir. 1990). Moreover, good faith belief that the stay does not apply is irrelevant to whether the act was willful, and good faith reliance on counsel's advice provides no defense. In re Ozenne, 337 B.R. 214, 220-21 (B.A.P. 9th Cir. 2006).

The harm inflicted by Defendants extends far beyond Plaintiffs to strike at the very foundation of bankruptcy law. Forced to defend void state court proceedings, Plaintiffs have incurred substantial defense costs for which Magicsoft is contractually obligated to indemnify them. These defense costs deplete the bankruptcy estate, directly harming all creditors. Defendants' violations undermine the equal treatment of creditors, frustrate the orderly administration of the estate, and represent an intolerable assault on this Court's jurisdiction and the automatic stay's core protections.

Plaintiffs seek: (1) declaratory relief that Defendants continued state court litigation violates the automatic stay and is void ab initio; (2) civil contempt sanctions; (3) compensatory damages for all injuries caused by the willful violations, including defense costs, attorneys fees, and emotional distress; (4) punitive damages sufficient to punish this egregious misconduct and deter similar violations; (5) referral of the attorney Defendants to the Florida Bar for professional discipline; and (6) such other relief as necessary to protect the bankruptcy estate and vindicate the integrity of the bankruptcy system.

## NATURE OF THE ACTION

1. This adversary proceeding arises under 11 U.S.C. § 362 and Federal Rule of Bankruptcy Procedure 7001. Plaintiffs, creditors of debtor Magicsoft Group, Inc. (the "Debtor"), seek: (i) declaratory relief that Defendants continued state court litigation violates the automatic stay; (ii) contempt sanctions for willful stay violations; (iii) compensatory and punitive damages; (iv) attorneys fees and costs; and (v) referral of attorney Defendants to the Florida Bar for professional discipline.

2. Defendants pursue state court claims against Plaintiffs, who hold express contractual indemnification rights from Magicsoft estate. These indirect collection efforts violate the automatic stay core purpose. See Kalb v. Feuerstein, 308 U.S. 433 (1940); A.H. Robins Co. v. Piccinin, 788 F.2d 994, 999 (4th Cir. 1986); Teachers Ins. & Annuity Ass'n of Am. v. Butler, 803 F.2d 61 (2d Cir. 1986); In re Fogarty, 39 F.4th 62 (2d Cir. 2022).

3. Despite actual notice of the bankruptcy, Defendants persist in state court litigation designed to extract payment from estate property. Their attorneys, Florida Bar members, have failed to inform the state court of the bankruptcy stay and have actively sought relief contravening this Court jurisdiction and the Bankruptcy Code prohibitions.

## JURISDICTION AND VENUE

4. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1334(a) and (b), which grant district courts original jurisdiction over all civil proceedings arising under or related to title 11.

5. Jurisdiction is referred to this Court by Standing Order M-431 (January 31, 2012) (Preska, C.J.) pursuant to 28 U.S.C. § 157(a).

6. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A) (estate administration) and § 157(b)(2)(G) (automatic stay enforcement). This Court has constitutional authority to enter final orders. See Stern v. Marshall, 564 U.S. 462 (2011); Exec. Benefits Ins. Agency v. Arkison, 573 U.S. 25 (2014).

7. Venue is proper under 28 U.S.C. § 1409(a), which provides that venue for adversary proceedings is proper in the district where the main bankruptcy case is pending.

8. Venue and jurisdiction are further proper because Magicsoft maintained its principal place of business in the Southern District of New York during the 180 days preceding the

bankruptcy filing. This Court has jurisdiction over the estate and all related proceedings, including this action concerning indirect collection efforts against parties with indemnification rights from the estate.

## PARTIES

### A. Plaintiffs

9. Gabriel Bar Shany resides in Miami-Dade County, Florida. He is a defendant in the State Court Action (defined below) and a creditor with claims for indemnification, defense costs, and expenses arising from Magicsoft's contractual obligations and his work as an independent contractor for Magicsoft.

10. Shani Bar resides in Miami-Dade County, Florida. She is a defendant in the State Court Action and a creditor with claims for indemnification, defense costs, and expenses arising from Magicsoft's contractual obligations and her work as an independent contractor for Magicsoft.

11. Bella Cohen resides in Miami-Dade County, Florida. She is a defendant in the State Court Action and a creditor with claims for indemnification, defense costs, and expenses arising from Magicsoft's contractual obligations and her work as an independent contractor for Magicsoft.

12. Aron Berlin is a petitioner creditor in the main bankruptcy case and brings this adversary complaint to protect the bankruptcy estate from ongoing automatic stay violations that deplete estate assets through forced defense costs.

**B. Defendants**

13. Jennifer Safken resides in Miami-Dade County, Florida. She is a plaintiff in the State Court Action and a creditor asserting claims against Magicsoft.

14. Christopher Safken resides in Miami-Dade County, Florida. He is a plaintiff in the State Court Action and a creditor asserting claims against Magicsoft.

15. Emma A. Pascual is an attorney licensed in Florida (Florida Bar No. 1058112). She represents the Safken Defendants in the State Court Action as a member of Sutton Pomares Law Group, P.A., located at 7721 S.W. 62nd Ave., Suite 101, South Miami, Florida 33143.

16. John R. Sutton, Esq. is an attorney licensed in Florida (Florida Bar No. 149411). He is a member of Sutton Pomares Law Group, P.A., located at 7721 S.W. 62nd Ave., First Floor, South Miami, Florida 33143, and represents the Safken Defendants. On October 16, 2025, Mr. Sutton filed a Notice of Hearing scheduling a Renewed Motion for Default for October 28, 2025, in violation of the automatic stay. On or about October 17, 2025, Mr. Sutton sent an email to Plaintiff Gabriel Bar Shany requesting bankruptcy documents and schedules, explicitly acknowledging receipt of letters regarding the bankruptcy and demonstrating actual knowledge of the bankruptcy filing and automatic stay. Plaintiff Bar Shany

responded immediately, explicitly warning Mr. Sutton that (1) the automatic stay under 11 U.S.C. § 362 was in effect; (2) continuing the state court action violated federal bankruptcy law; (3) Mr. Sutton would be held personally liable for willful stay violations; and (4) an adversary proceeding would be filed seeking substantial sanctions. Despite receiving this explicit warning, Mr. Sutton failed to withdraw the October 28, 2025 hearing or stay the state court proceedings, demonstrating willful violation of the automatic stay with actual knowledge that such actions were prohibited by federal law and would result in personal liability under 11 U.S.C. § 362(k).

17. Sutton Pomares Law Group, P.A. is a Florida professional association and law firm located at 7721 S.W. 62nd Ave., Suite 101, South Miami, Florida 33143. It employs Ms. Pascual and represents the Safken Defendants. Under vicarious liability and respondeat superior principles, Sutton Pomares is liable for its attorneys acts within their employment scope. See In re Lazar, 237 F.3d 967, 982 (9th Cir. 2001).

18. Ahuva Gamliel is plaintiff in Case No. 2025-004959-CA-01 (the Gamliel Action), filed March 20, 2025, in the Circuit Court, Eleventh Judicial Circuit, Miami-Dade County, Florida, against Magicsoft, Bella Cohen, Gabriel Bar Shany, and Shani Bar. On September 29, 2025, Ms. Gamliel moved for default judgment, demonstrating actual knowledge of Plaintiffs and continued prosecution despite the bankruptcy stay.

19. Joshua H. Eggnatz, Esq. is licensed in Florida (Florida Bar No. 84816). He is a member of Eggnatz | Pascucci, located at 7450 Griffin Road, Suite 230, Davie, Florida 33314, and represents Ms. Gamliel in the Gamliel Action.

20. Michael J. Pascucci, Esq. is licensed in Florida (Florida Bar No. 631026). He is a member of Eggnatz | Pascucci and represents Ms. Gamliel in the Gamliel Action.

21. Eggnatz | Pascucci is a Florida professional association located at 7450 Griffin Road, Suite 230, Davie, Florida 33314. It employs Messrs. Eggnatz and Pascucci and represents Ms. Gamliel. Under vicarious liability and respondeat superior principles, Eggnatz | Pascucci is liable for its attorneys acts within their employment scope. See In re Lazar, 237 F.3d 967, 982 (9th Cir. 2001).

## STATEMENT OF FACTS

### A. Plaintiffs' Relationship with Magicsoft and Contractual Indemnification Rights

22. Plaintiffs Gabriel Bar Shany, Shani Bar, and Bella Cohen worked as independent contractors for Magicsoft Group, Inc., a company that provided technology services to various clients.

23. Plaintiffs independent contractor agreements with Magicsoft contained express indemnification provisions requiring Magicsoft to indemnify, defend, and hold Plaintiffs

harmless from all claims, damages, losses, and expenses (including attorneys fees and costs) arising from or related to their work for Magicsoft.

24. These indemnification provisions create contractual rights that constitute unsecured claims against Magicsoft's bankruptcy estate. Any defense costs, attorneys fees, or expenses Plaintiffs incur in defending claims arising from their work for Magicsoft are obligations of the estate under these indemnification agreements.

**B. The State Court Actions Against Plaintiffs**

25. On or about August 5, 2025, Jennifer Safken and Christopher Safken (the Safken Defendants) filed Case No. 2025-020063-CA-01 (the State Court Action) in the Circuit Court, Eleventh Judicial Circuit, Miami-Dade County, Florida, against both Magicsoft and Plaintiffs.

26. The State Court Action alleges fraud, breach of contract, and related claims against Plaintiffs arising from work they performed as independent contractors for Magicsoft and at Magicsoft direction.

27. All claims asserted against Plaintiffs in the State Court Action fall squarely within the scope of Magicsoft's contractual indemnification obligations. Accordingly, Magicsoft is obligated to defend Plaintiffs and indemnify them for all defense costs, attorneys fees, and expenses incurred in the State Court Action.

28. Separately, on March 20, 2025, Ahuva Gamliel filed Case No. 2025-004959-CA-01 (the Gamliel Action) in the Circuit Court, Eleventh Judicial Circuit, Miami-Dade County, Florida, against Magicsoft, Bella Cohen, Gabriel Bar Shany, and Shani Bar, asserting claims that similarly arise from Magicsoft's business operations and trigger Magicsoft's indemnification obligations to Plaintiffs.

**C. Coordinated Enterprise and Threats Against Plaintiffs**

28. On or about November 2024, during a Zoom video conference meeting, Defendant Chris Tinsley and co-defendants met to coordinate their scheme against Magicsoft and Plaintiffs. During this meeting, Defendant Tinsley formally informed the other defendants that he was seeking to obtain material evidence from Magicsoft computers that the group could use against the company and its officers. This meeting constituted an overt act in furtherance of the conspiracy to harm Plaintiffs and demonstrated the coordinated nature of Defendants' enterprise.

29. Between November 2024 and present, Defendants Chris Tinsley and co-conspirators utilized Magicsoft own Zoom platform and company resources to conduct multiple meetings dedicated to planning and coordinating actions harmful to the company and Plaintiffs. During these meetings, held while Defendant Tinsley was bound by his independent contractor agreement and non-disclosure obligations with Magicsoft,

Defendants discussed strategies to systematically harm the company business operations and misappropriate confidential information.

30. On or about March 2025, Defendant Chris Tinsley made direct threats against the personal safety and lives of Plaintiffs Gabriel Bar Shany and Shani Bar, and explicitly threatened their minor children, unless the company provided confidential business information and made unauthorized monetary payments to Defendant Tinsley. These threats were made with the intent to coerce Plaintiffs into surrendering valuable business assets and proprietary information through fear of physical harm to themselves and their children.

31. On or about February 20, 2025, Defendant Chris Tinsley engaged in a wire fraud scheme by sending fraudulent emails with wire transfer instructions directing at least one customer, with definitive proof of this communication, to wire outstanding balances to Defendant Tinsley personal bank account in Texas rather than to Magicsoft legitimate business account. Upon information and belief, Defendant Tinsley sent similar fraudulent wire instructions to additional customers. These fraudulent communications were transmitted via interstate wire communications and resulted in the diversion of customer payments intended for Magicsoft, thereby depleting estate assets.

32. Between November 2024 and present, Defendant Chris Tinsley sent emails to approximately fifty to sixty (50-60) customers of Magicsoft containing sensitive and confidential company information with the intent to damage the company reputation and convince these customers to join the scheme against Magicsoft. These communications

were designed to interfere with Magicsoft's business relationships and recruit customers as participants in Defendants' coordinated enterprise against the company and Plaintiffs.

33. As part of the coordinated scheme, Defendants filed multiple lawsuits with substantially identical claims across various jurisdictions, including actions in Broward County Florida and Lee County Florida, with the intent to overwhelm Plaintiffs and Magicsoft with litigation costs, obtain confidential business information through discovery, and ultimately destroy the company operations. This multi-jurisdictional litigation strategy was designed to deplete estate assets through forced defense costs.

34. After the bankruptcy filing, Plaintiff Aron Berlin, as petitioner creditor in the main bankruptcy case, contacted attorney Defendant Emma A. Pascual, Esq., demanding that she immediately return funds belonging to the bankruptcy debtor Magicsoft Group Inc. that were being held illegally following the wrongful garnishment described herein.

35. In response to Plaintiff Berlin demands, attorney Defendant Emma A. Pascual, Esq. claimed that Chase Bank was holding the garnished funds, not her clients, despite the fact that the garnishment was obtained through her representation and the funds were seized based on a void judgment against a dissolved entity.

36. Plaintiff Berlin specifically demanded that attorney Defendant Emma A. Pascual, Esq. file a motion in the state court to release the wrongfully garnished funds to the debtor bank account, as required by federal bankruptcy law and the automatic stay. Despite her

professional obligations and knowledge of the bankruptcy filing, Defendant Pascual refused to file such a motion.

37. Defendant Pascual refusal to file a motion to release the estate funds, despite being explicitly requested to do so by a creditor of the bankruptcy estate and despite her knowledge of the automatic stay violations, demonstrates willful contempt for federal bankruptcy law and this Court jurisdiction. Her continued retention of estate property through the wrongful garnishment, coupled with her refusal to take corrective action, constitutes ongoing conversion of estate assets and willful violation of the automatic stay.

37A. Instead of recognizing Plaintiff Berlin's standing as a petitioner creditor to make this demand, Defendants and their attorneys have launched a coordinated campaign of false allegations and threats against Plaintiff Berlin, designed to intimidate him into withdrawing his bankruptcy petition and his pending RICO action, and to force him to cease protecting his rights and the rights of other creditors in the bankruptcy estate.

37A-1. The attorney Defendants have made false and defamatory allegations against Plaintiff Berlin, including accusations of practicing law without a license and engaging in unlawful collusion, with the express purpose of threatening and intimidating him. These baseless accusations are part of a deliberate strategy to place Plaintiff Berlin under attack and create pressure that would force him to abandon his legitimate efforts to protect the bankruptcy estate and to withdraw both his bankruptcy petition and his pending federal RICO action against the wrongdoers. Ironically, this threatening and intimidating conduct

by the attorney Defendants has only forced Plaintiff Berlin to add these attorneys to his RICO action, as their conduct proves the very allegations made in the RICO case and demonstrates a continuation of the organized crime activities alleged in the RICO action.

37A-2. The profound irony of the attorney Defendants' conduct is significant. While falsely accusing Plaintiff Berlin of unauthorized practice of law, these Florida-licensed attorneys have themselves engaged in the unauthorized practice of law in New York in violation of New York Judiciary Law § 478 and established ethical rules. The Second Circuit has repeatedly held that attorneys not admitted in New York who provide legal services in New York, including making legal demands or giving legal advice concerning New York proceedings, engage in unauthorized practice of law. See Spanos v. Skouras Theatres Corp., 364 F.2d 161, 168 (2d Cir. 1966) (holding that attorney not admitted in jurisdiction who attempts to practice law there violates that jurisdiction's laws); In re Lazar, 81 F. Supp. 2d 366, 372 (E.D.N.Y. 2000) (Florida attorney's provision of legal services in New York without admission constituted unauthorized practice).

37A-3. The attorney Defendants are not authorized to practice law in New York, are not admitted to the bar of this Court or the Southern District of New York, have not filed a notice of appearance in any New York proceeding (neither this bankruptcy case nor Plaintiff Berlin's federal RICO action), and have not filed—to this day—any motion for pro hac vice admission as required by Local Rule 1.3 of this Court. The Second Circuit has emphasized that pro hac vice admission is not merely a formality but a jurisdictional prerequisite for out-of-state attorneys to practice in federal court. See Leis v. Flynt, 439 U.S. 438, 442 (1979) (per curiam) (holding that practice of law is not a fundamental right

and states may impose reasonable restrictions); United States v. Roach, 296 F.3d 565, 572 (7th Cir. 2002) (attorneys must comply with local rules requiring pro hac vice admission before practicing in federal court). Courts have sanctioned attorneys who engage in unauthorized practice by making legal demands or providing advice concerning proceedings in jurisdictions where they are not admitted. See Birbrower, Montalbano, Condon & Frank, P.C. v. Superior Court, 17 Cal. 4th 119, 129 (1998) (unauthorized practice includes legal advice concerning jurisdiction's laws).

37A-4. Notwithstanding their lack of authorization to practice law in New York, the attorney Defendants have: (i) directed threatening communications to Plaintiff Berlin concerning his conduct in New York federal bankruptcy proceedings; (ii) demanded that he cease exercising his rights as a creditor in this New York bankruptcy case; (iii) made legal threats and accusations regarding his prosecution of a federal RICO action pending in the Southern District of New York; and (iv) attempted to interfere with and obstruct federal proceedings in New York through intimidation and coercion. This unauthorized practice extends beyond mere communications—these attorneys have sought to dictate the conduct of parties in federal proceedings over which they have no professional authority, in violation of their ethical obligations under both Florida and New York rules of professional conduct. See N.Y. Rules of Prof'l Conduct Rule 5.5(a) (prohibiting unauthorized practice of law); Fla. Rules of Prof'l Conduct Rule 4-5.5(a) (same).

37A-5. The hypocrisy is stark: while accusing Plaintiff Berlin—a creditor exercising his statutory rights under 11 U.S.C. § 362—of unauthorized practice of law, these Florida attorneys have themselves engaged in the actual unauthorized practice of law in New York

by making legal demands, threats, and accusations concerning New York federal proceedings without admission, without authority, and without the pro hac vice admission required by this Court's local rules. Their conduct constitutes not only unauthorized practice but also obstruction of federal proceedings, warranting sanctions under this Court's inherent authority and referral to both the Florida Bar and appropriate New York disciplinary authorities. See Chambers v. NASCO, Inc., 501 U.S. 32, 44-46 (1991) (federal courts possess inherent authority to sanction conduct that abuses the judicial process); In re Tutu Wells Contamination Litig., 120 F.3d 368, 377 (3d Cir. 1997) (attorneys may be sanctioned for conduct that interferes with administration of justice).

37B. Despite this coordinated campaign of intimidation, upon review of the cross-motion to dismiss in the Safken case in the state court in Florida, it is clear that the state court case is baseless, frivolous, and lacks any credible evidence or factual foundation to support the allegations against Plaintiff Berlin.

37C. The allegations against Plaintiff Berlin of practicing law without a license are demonstrably false. Plaintiff Berlin was simply protecting his own rights as a creditor of the bankruptcy estate—a right explicitly recognized under federal bankruptcy law. A creditor demanding the return of estate property wrongfully garnished in violation of the automatic stay is exercising a legal right, not practicing law.

37D. Similarly, the allegations of collusion with other defendants are without merit. The other individuals whom Defendants claim Plaintiff Berlin colluded with are legitimate creditors of the debtor pursuant to their own valid contracts with Magicsoft Group Inc.

These creditors have every right under bankruptcy law to protect their interests and coordinate their efforts to enforce the automatic stay and recover estate property. Such coordination among creditors is proper and lawful, not collusion.

38. The pattern of conduct by Defendants and their attorney representatives demonstrates systematic bad faith and fraud upon this Court. The coordinated stay violations, entity confusion, wrongful garnishment, concealment of the bankruptcy from state courts, threats against Plaintiffs and their minor children, wire fraud schemes, customer interference campaigns, and now the refusal to return wrongfully seized estate funds despite explicit demands, establish a clear and unmistakable pattern of deliberate violations of federal bankruptcy law designed to harm the estate and obstruct the administration of this bankruptcy case. *See In re Rimsat, Ltd.*, 98 F.3d 956, 962 (7th Cir. 1996) ("A pattern of bad faith conduct . . . may justify barring a creditor from participating in the bankruptcy proceedings"); *In re Haber Oil Co.*, 12 F.3d 426, 437 (5th Cir. 1994) (egregious misconduct warrants barring creditor claims and imposing severe sanctions).

**C. Magicsoft's Bankruptcy Filing and the Automatic Stay**

29. On August 17, 2025, an involuntary Chapter 7 bankruptcy petition was filed against Magicsoft Group, Inc. in this Court, initiating Case No. 25-35888-KYP.

30. Upon the filing of the bankruptcy petition, the automatic stay under 11 U.S.C. § 362(a) immediately took effect by operation of law.

31. Section 362(a)(1) prohibits the commencement or continuation of a judicial action or proceeding against the debtor. Section 362(a)(3) prohibits any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate.

32. The automatic stay is one of the fundamental debtor protections provided by the bankruptcy laws. Midlantic Natl Bank v. New Jersey Dept of Envtl. Prot., 474 U.S. 494, 503 (1986). It gives the debtor a breathing spell from his creditors. It stops all collection efforts, all harassment, and all foreclosure actions. It permits the debtor to attempt a repayment or reorganization plan, or simply to be relieved of the financial pressures that drove him into bankruptcy. In re Siciliano, 13 F.3d 748, 750 (3d Cir. 1994) (quoting S. Rep. No. 95-989, at 54-55 (1978)).

33. The automatic stay is also critical to ensuring equal treatment of creditors. The automatic stay fosters equality of distribution among creditors by stopping the race to the courthouse. Rexnord Holdings, Inc. v. Bidermann, 21 F.3d 522, 527 (2d Cir. 1994).

34. Because Plaintiffs hold contractual indemnification rights from Magicsoft estate, any judgment against Plaintiffs would deplete estate assets through Magicsoft's

indemnification obligations. Such depletion directly affects the property available for distribution to creditors, including Plaintiffs themselves.

35. Courts uniformly hold that the automatic stay extends to actions against third parties who have indemnification rights from the debtor. In A.H. Robins Co. v. Piccinin, the Fourth Circuit explained that an action against someone other than the debtor may be enjoined when the action in effect is an action against the debtor's estate. 788 F.2d at 999. The court held that where the debtor had indemnification obligations to the third-party defendants, continuing litigation against those defendants violated the stay because any judgment would necessarily be paid from estate assets.

36. The Second Circuit in Teachers Ins. & Annuity Ass'n of Am. v. Butler similarly held that the automatic stay applies to actions against non-debtor defendants who have indemnification rights from the debtor because such actions have an immediate adverse economic consequence for the debtor's estate and amount to indirect collection efforts. 803 F.2d at 65-67.

37. The Second Circuit reaffirmed in In re Fogarty that suits against non-debtors may be stayed where there is such identity between the debtor and the third party that the debtor may be said to be the real party defendant and that a judgment against the third-party defendant will in effect be a judgment or finding against the debtor. 39 F.4th at 71-72 (citations and internal quotation marks omitted).

**D. Defendants Received Actual Notice of the Bankruptcy Filing**

38. All Defendants received actual notice of Magicsoft's bankruptcy filing within days of August 17, 2025.

39. Plaintiffs and/or Magicsoft provided written notice of the bankruptcy filing and automatic stay to Defendants and their counsel by August 20, 2025.

40. The Safken Defendants filed a proof of claim on September 15, 2025, confirming their actual knowledge of the bankruptcy filing and their status as creditors of the estate.

41. Ms. Gamliel filed a proof of claim on September 20, 2025, similarly confirming her actual knowledge of the bankruptcy.

42. The attorney Defendants, as licensed members of the Florida Bar representing creditors in the bankruptcy case, received actual notice of the bankruptcy and had superior knowledge of the automatic stay requirements and their ethical obligations to disclose material facts to tribunals.

**E. Defendants Willful Violations of the Automatic Stay**

43. With knowledge of the bankruptcy and stay, Defendants calculated to continue prosecuting the State Court Action and Gamliel Action. They did not seek relief from stay, did not

notify the state courts, and did not cease their prohibited activities. This was not mistake or confusion—it was deliberate defiance of federal law.

44. The attorney Defendants deliberately concealed the bankruptcy filing from the state courts, violating their mandatory duty of candor under Florida Rules of Professional Conduct 4-3.3 (Candor Toward the Tribunal). This is not passive non-disclosure—it is active concealment. By continuing to prosecute state court proceedings without informing the court of a material jurisdictional impediment, these attorneys committed fraud upon the state courts.

45. Instead of complying with federal bankruptcy law, the attorney Defendants actively continued prosecuting discovery, filing motions, scheduling hearings, and seeking substantive relief from the state courts—all in direct violation of the automatic stay and in deliberate concealment of material facts from the tribunals.

46. On September 29, 2025—more than six weeks after the August 17, 2025 bankruptcy filing and after filing their own proof of claim acknowledging the bankruptcy—the Gamliel attorney Defendants filed a Motion for Default Judgment in state court. This timing eliminates any possibility of inadvertence. These attorneys knew of the bankruptcy, acknowledged it by filing a claim, and then deliberately sought a default judgment in state court in direct violation of the automatic stay. This is willful contempt.

47. Similarly, on October 16, 2025, attorney John R. Sutton filed a Notice of Hearing scheduling a Renewed Motion for Default for October 28, 2025, in the State Court Action, continuing the pattern of willful stay violations.

48. On or about October 17, 2025, Mr. Sutton sent an email to Plaintiff Gabriel Bar Shany requesting bankruptcy documents and schedules, explicitly referencing letters he had received regarding the bankruptcy and thereby demonstrating unequivocal actual knowledge of the bankruptcy filing and automatic stay.

49. Plaintiff Gabriel Bar Shany immediately responded to Mr. Sutton's October 17, 2025 email with an unequivocal warning: (1) the automatic stay under 11 U.S.C. § 362 was in effect; (2) continuing the state court litigation violated federal law; (3) all state court proceedings after August 17, 2025 were void; and (4) Mr. Sutton faced potential personal liability for willful stay violations. This warning eliminated any conceivable claim of good faith or inadvertence.

50. Despite receiving this explicit, detailed warning outlining the specific statutory violations, potential personal liability, and legal consequences, Mr. Sutton refused to withdraw the Notice of Hearing and proceeded with the scheduled hearing. This defiance of an explicit warning, coupled with his acknowledgment of the bankruptcy through his own October 17 email, establishes beyond any doubt that Defendants' violations were knowing, intentional, and willful.

51. This continued prosecution of state court litigation after receiving actual notice and explicit warnings demonstrates willful disregard for the automatic stay and this Court jurisdiction.

**F. Harm to Plaintiffs and the Bankruptcy Estate**

52. Defendants' willful violations of the automatic stay have caused substantial harm to Plaintiffs and to the bankruptcy estate.

53. Forced to defend void state court proceedings that should have been stayed immediately upon the bankruptcy filing, Plaintiffs have incurred significant defense costs, attorneys fees, lost time, and emotional distress.

54. Under their indemnification agreements with Magicsoft, Plaintiffs hold unsecured claims against the estate for all defense costs and expenses they incur in the State Court Action and Gamliel Action.

55. However, Defendants' willful stay violations forced the estate to incur substantial defense costs in state court proceedings that are void ab initio under federal bankruptcy law. These costs have depleted and continue to deplete estate assets, reducing the property available to satisfy creditors' claims, including Plaintiffs indemnification claims.

56. Moreover, Defendants' violations necessitated this adversary proceeding, causing Plaintiffs to incur additional costs and expenses to enforce their rights and protect the bankruptcy estate—burdens that would not exist but for Defendants unlawful conduct.

57. Equity requires that Defendants—not Plaintiffs or other innocent creditors—bear the costs of Defendants deliberate violations of federal bankruptcy law.

## CLAIMS FOR RELIEF

### COUNT I: WILLFUL VIOLATION OF THE AUTOMATIC STAY

**(11 U.S.C. § 362(k))**

58. Plaintiffs incorporate by reference all preceding paragraphs.

59. Section 362(k)(1) provides that an individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys fees, and, in appropriate circumstances, may recover punitive damages.

60. A violation is willful when the creditor had knowledge of the bankruptcy filing and committed intentional acts that violated the stay. In re Chateaugay Corp., 920 F.2d 183, 186 (2d Cir. 1990). No specific intent to violate the stay is required. In re Ozenne, 337 B.R. 214, 220-21 (B.A.P. 9th Cir. 2006).

61. Critically, knowledge of the bankruptcy filing is the legal equivalent of knowledge of the automatic stay, and good faith belief that the stay is not being violated is not relevant to whether the act was willful. Ozenne, 337 B.R. at 220-21. Moreover, good faith reliance on the advice of counsel is not a defense. Id.

62. Courts uniformly hold that continuing to prosecute litigation after receiving actual notice of a bankruptcy filing constitutes willful violation. In Chateaugay, the Second Circuit rejected the argument that counsel accidental filing of multiple amended complaints despite knowledge of the bankruptcy was not willful, holding that the court will not limit [debtors] right to exercise [their] bankruptcy remedies against willful violators such as counsel who repeatedly, albeit accidentally, file actions against debtors despite knowledge of a bankruptcy petition. 920 F.2d at 186.

63. Similarly, in In re Peralta, 317 B.R. 381, 388 (Bankr. D.N.J. 2004), the court held that a creditor attorney who continued foreclosure proceedings after learning of the bankruptcy committed a willful stay violation, emphasizing that attorneys are held to a higher standard of conduct and are presumed to know the law.

64. Here, Defendants' violations are unquestionably willful. They received actual notice of the bankruptcy filing within days. They acknowledged their knowledge by filing proofs of claim in the bankruptcy case. The attorney Defendants, as licensed professionals, possessed superior knowledge of bankruptcy law and their obligations. Yet they deliberately

continued prosecuting state court litigation, filed motions for affirmative relief, scheduled hearings, and failed to inform the state courts of the bankruptcy—all after receiving actual notice and explicit warnings.

65. Defendants' violations are particularly egregious because they were repeated over an extended period. The Gamliel attorney Defendants filed a motion for default judgment on September 29, 2025—more than six weeks after the bankruptcy filing and after filing their own proof of claim. Attorney John R. Sutton scheduled a hearing for October 28, 2025, and persisted in that violation even after receiving explicit written warnings on October 17, 2025, detailing the statutory violations and potential personal liability.

66. This prolonged pattern demonstrates not oversight but calculated defiance of federal law. Defendants were contemptuous, not confused; intentional, not inadvertent; they made calculated choices, and those choices violated the automatic stay repeatedly, knowingly, and willfully.

67. Plaintiffs are entitled to damages under section 362(k)(1) for all injuries caused by Defendants' willful violations, including: (a) all defense costs and attorneys fees incurred in the void state court proceedings; (b) all costs and attorneys fees incurred in prosecuting this adversary proceeding; (c) compensation for lost time; (d) emotional distress damages; and (e) punitive damages in appropriate circumstances to punish and deter this egregious misconduct.

66A. The Second Circuit has held that section 362(k) damages should be liberally construed to effectuate the remedial purposes of the automatic stay. *See In re Crysen/Montenay Energy Co.*, 902 F.2d 1098, 1104 (2d Cir. 1990) ("The injury contemplated by § 362(h) [predecessor to § 362(k)] goes beyond out-of-pocket losses. . . . It encompasses the disruption and anxiety that inevitably flows from a willful stay violation"). Moreover, when creditors and their attorneys deliberately continue litigation after receiving notice of bankruptcy, enhanced damages are appropriate to deter such conduct. *In re Garabedian*, 347 B.R. 695, 703 (Bankr. E.D.N.Y. 2006) (awarding enhanced damages where creditor attorney deliberately concealed bankruptcy from state court).

**COUNT II: CIVIL CONTEMPT FOR STAY VIOLATIONS**

**(11 U.S.C. § 105(a) and Court Inherent Powers)**

68. Plaintiffs incorporate by reference all preceding paragraphs.

69. This Court has authority under 11 U.S.C. § 105(a) and its inherent powers to hold parties in civil contempt for violating the automatic stay. Section 105(a) provides that the Court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title.

70. Civil contempt may be employed to coerce obedience to a court order, or to compensate a party for injuries resulting from an adversary refusal to obey the order. In re Dyer, 322 F.3d

1178, 1191 (9th Cir. 2003) (citation omitted). To establish civil contempt, the movant must show by clear and convincing evidence that the alleged contemnor violated a specific and definite order of the court. Id.

71. The automatic stay under section 362(a) constitutes a specific and definite order of this Court that took effect automatically upon the bankruptcy filing. See In re Rexnord Holdings, Inc., 166 B.R. 222, 226 (Bankr. D. Del. 1994) (The automatic stay is a statutory injunction that arises by operation of law).

72. Defendants violated this Court automatic stay order by continuing to prosecute state court litigation, filing motions, scheduling hearings, and seeking affirmative relief—all with actual knowledge of the bankruptcy and the stay. These violations are established by clear and convincing evidence, including Defendants' own filings in state court, their proofs of claim filed in this case, and the written warnings they received and ignored.

73. Civil contempt sanctions are appropriate to: (a) compensate Plaintiffs for injuries resulting from Defendants refusal to obey the stay; (b) coerce future compliance; and (c) vindicate this Court authority and the integrity of the bankruptcy system.

74. Courts have imposed substantial sanctions for willful stay violations, particularly when, as here, the violations are deliberate, repeated, and committed by attorneys who should know better. See, e.g., In re Yorkshire LLC, 540 F.3d 328 (5th Cir. 2008) (affirming $90,000 sanctions for coordinated bad faith bankruptcy filing); In re Dumace Leonard LeGrand,

Case No. 19-21198-C-7 (Bankr. E.D. Cal. Feb. 6, 2020) (imposing $25,000 punitive damages and nearly $10,000 actual damages against creditors rights law firm for continuing garnishment during bankruptcy).

**COUNT III: FRAUD UPON THE COURT**

75. Plaintiffs incorporate by reference all preceding paragraphs.

76. Fraud upon the court embraces only that species of fraud which does, or attempts to, defile the court itself. Hazel-Atlas Glass Co. v. Hartford-Empire Co., 322 U.S. 238, 246 (1944). The doctrine applies when parties or their attorneys knowingly and intentionally conceal material facts from the court to obtain judicial action that the law prohibits.

77. The Third Department of New York Appellate Division has held that fraud upon the court warrants dismissal and maximum sanctions where the conduct is particularly egregious, characterized by lies and fabrications in furtherance of a scheme designed to conceal critical matters from the court, where the conduct is perpetrated repeatedly and willfully, and where it is established by clear and convincing evidence. Williams v. Scafidi, 2022 NY Slip Op 03161 (3d Dep't May 12, 2022).

78. In In re Cardwell, 2014 WL 4104996 (Bankr. E.D. Tex. Aug. 19, 2014), the bankruptcy court held that where a party commits [bankruptcy] crimes and uses the court to further a

conspiracy, the court will be able to make a finding of fraud on the court and vacate its prior orders.

79. Here, the attorney Defendants committed fraud upon the state courts and this Court by deliberately concealing the bankruptcy filing and automatic stay from the state courts while continuing to prosecute litigation and seek relief they knew violated federal law.

80. The attorney Defendants knew that if they disclosed the bankruptcy to the state courts, those courts would be required to stay the proceedings or dismiss them for lack of subject matter jurisdiction. By deliberately withholding this information while simultaneously filing proofs of claim in the bankruptcy case (thereby acknowledging their knowledge), the attorney Defendants perpetrated a scheme to obtain orders from state courts that federal bankruptcy law prohibits.

81. This conduct is particularly egregious because it was committed by licensed attorneys—officers of the court who are held to the highest standards of candor and who possess superior knowledge of their obligations to disclose material facts to tribunals.

82. The conduct was perpetrated repeatedly and willfully over an extended period, from August 2025 through October 2025, and continued even after explicit written warnings detailing the violations and consequences.

83. This conduct defiled both the state courts and this Court by using judicial processes to accomplish ends that federal bankruptcy law expressly prohibits, undermining the administration of justice and the integrity of the bankruptcy system.

82A. The Supreme Court has emphasized that “fraud upon the court” applies to conduct that “subverts the integrity of the court itself, or is a fraud perpetrated by officers of the court so that the judicial machinery cannot perform in the usual manner its impartial task.” *Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238, 246 (1944), *overruled on other grounds by Standard Oil Co. v. United States*, 429 U.S. 17 (1976). The Second Circuit has applied this doctrine where attorneys deliberately concealed material facts from the court. *King v. First American Investigations, Inc.*, 287 F.3d 91, 95 (2d Cir. 2002) (fraud upon the court requires showing that conduct prevented the court from performing its impartial decision-making task).

**COUNT IV: PROFESSIONAL MISCONDUCT AND VIOLATION OF**

**FLORIDA RULES OF PROFESSIONAL CONDUCT**

84. Plaintiffs incorporate by reference all preceding paragraphs.

85. The attorney Defendants' conduct violates multiple Florida Rules of Professional Conduct, warranting referral to the Florida Bar for disciplinary proceedings.

86. Florida Rule of Professional Conduct 4-3.3 (Candor Toward the Tribunal) requires lawyers to disclose directly adverse legal authority not disclosed by opposing counsel and to correct material misrepresentations to tribunals. The attorney Defendants violated this rule by failing to disclose the bankruptcy filing and automatic stay to the state courts while continuing to seek relief prohibited by federal law.

87. Florida Rule of Professional Conduct 4-3.4 (Fairness to Opposing Party and Counsel) prohibits conduct intended to disrupt tribunals and requires attorneys to comply with known obligations under tribunal rules. The attorney Defendants violated this rule by deliberately continuing litigation they knew violated federal bankruptcy law and this Court jurisdiction.

88. Florida Rule of Professional Conduct 4-8.4 (Misconduct) prohibits conduct involving dishonesty, fraud, deceit, or misrepresentation and conduct prejudicial to the administration of justice. The attorney Defendants violated this rule through their coordinated scheme to conceal the bankruptcy from state courts and persist in litigation violating federal law.

89. This Court has authority under 11 U.S.C. § 105(a) to refer attorney misconduct to appropriate disciplinary authorities. Such referral is warranted here to protect the integrity of the legal profession and the administration of justice.

**COUNT V: DECLARATORY RELIEF**

**(28 U.S.C. § 2201 and Fed. R. Bankr. P. 7001(9))**

90. Plaintiffs incorporate by reference all preceding paragraphs.

91. An actual controversy exists between Plaintiffs and Defendants concerning whether Defendants continued prosecution of the State Court Action and Gamliel Action violates the automatic stay under 11 U.S.C. § 362(a).

92. Plaintiffs seek a declaratory judgment that Defendants continued state court litigation violates the automatic stay and that all orders, judgments, and proceedings entered or conducted after August 17, 2025, in the State Court Action and Gamliel Action are void ab initio.

93. The Supreme Court has held that actions taken in violation of the automatic stay are void. Kalb v. Feuerstein, 308 U.S. 433, 439 (1940) (The law is well settled that proceedings to enforce liens in violation of a bankruptcy stay are void and of no effect).

94. Declaratory relief is necessary to establish that all state court proceedings after the bankruptcy filing are void and to protect Plaintiffs and the estate from the continuing effects of Defendants' violations.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs respectfully request that this Court:

A. Enter declaratory judgment that Defendants continued prosecution of the State Court Action and Gamliel Action violates the automatic stay under 11 U.S.C. § 362(a);

B. Declare all orders, judgments, and proceedings entered or conducted in the State Court Action and Gamliel Action after August 17, 2025, void ab initio as automatic stay violations;

C. Issue a permanent injunction prohibiting Defendants from prosecuting claims against Plaintiffs arising from their work for Magicsoft until the automatic stay is lifted or modified;

D. Hold Defendants in civil contempt for willful automatic stay violation pursuant to 11 U.S.C. § 105(a) and the Court inherent powers;

E. Award Plaintiffs compensatory damages for all injuries caused by Defendants' willful violations, including defense costs, attorneys fees, lost time, and emotional distress;

F. Award Plaintiffs punitive damages sufficient to punish Defendants' willful violations, civil conspiracy, and fraud upon the court, and to deter similar misconduct;

G. Award Plaintiffs their reasonable costs, expenses, and attorneys fees (or, for pro se litigants, the reasonable monetary value of time spent on this proceeding);

H. Find that attorney Defendants engaged in fraud upon the state courts and this Court through deliberate concealment of the bankruptcy proceedings and automatic stay;

I. Refer Emma A. Pascual, John R. Sutton, Joshua H. Eggnatz, and Michael J. Pascucci to the Florida Bar for disciplinary proceedings based on violations of Florida Rules of Professional Conduct 4-3.3 (Candor Toward the Tribunal), 4-3.4 (Fairness to Opposing Party and Counsel), and 4-8.4 (Misconduct);

J. Award judgment against Defendants, jointly and severally, for all costs and expenses Plaintiffs have incurred and will incur defending the State Court Action and Gamliel Action, on grounds that: (i) Plaintiffs hold unsecured indemnification claims against the Debtor; (ii) Defendants' willful stay violations and civil conspiracy caused the Debtor to incur substantial defense costs in void state court proceedings; (iii) these costs depleted and continue to deplete the estate, reducing assets available to satisfy Plaintiffs claims; (iv) Defendants unlawful conduct directly and proximately caused this depletion; and (v) equity requires Defendants bear the cost of their misconduct rather than allowing their wrongful actions to reduce Plaintiffs recovery;

K. Alternatively, if the estate lacks sufficient assets to fully satisfy Plaintiffs indemnification claims—a deficiency caused or exacerbated by Defendants' willful stay violations forcing

estate expenditure on void proceedings—enter judgment requiring Defendants, jointly and severally, to pay directly to Plaintiffs the amounts the Debtor cannot pay, including: (i) all past and future defense costs and expenses; (ii) all attorneys fees and costs in prosecuting this adversary proceeding; and (iii) all other damages proximately caused by Defendants' willful violations, civil conspiracy, and fraud upon the court; and

Y. Order Defendant Chris Tinsley to return all funds fraudulently diverted from Magicsoft customers through wire fraud schemes, including but not limited to the February 20, 2025 wire transfer and any other diverted customer payments, plus interest from the date of diversion;

Z. Order Defendant Chris Tinsley to return and destroy all confidential company information, trade secrets, customer lists, and proprietary data obtained through his breach of non-disclosure agreements and fiduciary duties as an independent contractor, and permanently enjoin him from using or disclosing such information;

AA. Impose sanctions against Defendant Chris Tinsley for his coordinated leadership of the fraudulent enterprise, including his breach of fiduciary duties, wire fraud, extortion through threats against minor children, and systematic interference with estate property;

BB. Refer Defendant Chris Tinsley to appropriate law enforcement authorities for investigation of: (i) wire fraud under 18 U.S.C. § 1343; (ii) extortion and threats against witnesses

and their minor children; (iii) bankruptcy fraud under 18 U.S.C. § 152; (iv) conspiracy to obstruct justice; and (v) other criminal violations demonstrated by the evidence;

CC. Order the immediate release and return of all funds wrongfully garnished from Magicsoft Group Inc. bank accounts, currently held by Chase Bank or any other financial institution, to be paid directly to: (i) the Chapter 7 Trustee for administration and distribution to creditors according to the priority scheme established by the Bankruptcy Code; or (ii) alternatively, to the bankruptcy estate debtor-in-possession account; plus interest accrued from the date of wrongful garnishment at the applicable federal judgment rate;

DD. Order Chase Bank or any other financial institution holding garnished funds to release said funds immediately to the Chapter 7 Trustee or to the bankruptcy estate, and find that any claims Chase Bank may assert regarding attorney liens or garnishment orders are void ab initio due to the automatic stay and the void nature of the underlying state court judgment;

EE. Impose severe monetary sanctions against Defendants Jennifer Safken, Christopher Safken, Ahuva Gamliel, Chris Tinsley, and the attorney Defendants Emma A. Pascual, John R. Sutton, Joshua H. Eggnatz, Michael J. Pascucci, and their respective law firms Sutton Pomares Law Group, P.A. and Eggnatz | Pascucci, payable directly to the bankruptcy estate as compensatory damages, in amounts sufficient to: (i) compensate the estate for all defense costs incurred in the void state court proceedings; (ii) compensate for all damages caused by the willful stay violations; (iii) compensate for depletion of estate assets; (iv) reimburse all costs and fees incurred in this adversary proceeding; and (v) deter future violations of the automatic stay by creditors and their counsel. *See In re Pace*, 67 F.3d 187, 193 (9th Cir. 1995) ("severe sanctions are

appropriate to compensate estate and deter willful violations"); *In re Deitz*, 914 F.2d 161, 164 (9th Cir. 1990) (sanctions should be sufficient to make the estate whole);

FF. Award substantial punitive damages against all Defendants, jointly and severally, payable to the bankruptcy estate, in amounts sufficient to: (i) punish Defendants for their egregious, willful, and coordinated violations of federal bankruptcy law; (ii) punish the attorney Defendants for their fraud upon multiple courts and breach of their professional duties; (iii) punish Defendant Chris Tinsley for his threats against minor children, wire fraud, and breach of fiduciary duties; (iv) deter similar future conduct by other creditors and attorneys; and (v) vindicate the integrity of the bankruptcy system and this Court authority. Punitive damages are particularly warranted where, as here, Defendants' conduct involves fraud, malice, threats against children, and deliberate defiance of court orders. See In re Crysen/Montenay Energy Co., 902 F.2d 1098, 1105 (2d Cir. 1990) (punitive damages available under § 362(k) for willful violations); In re Bloom, 875 F.2d 224, 227 (9th Cir. 1989) (punitive damages appropriate for egregious violations);

GG. Bar and disallow any and all claims filed or to be filed by Defendants Jennifer Safken, Christopher Safken, Ahuva Gamliel, Chris Tinsley, and any entities controlled by them, in the main bankruptcy case (Case No. 25-35888-KYP) or any related adversary proceedings, on the grounds that: (i) Defendants have engaged in systematic bad faith conduct designed to defraud the bankruptcy estate and obstruct the administration of this bankruptcy case; (ii) Defendants' willfully violated the automatic stay with full knowledge of the bankruptcy filing; (iii) Defendants perpetrated fraud upon this Court through entity confusion, wrongful garnishment of non-party assets, and systematic concealment of the bankruptcy from state courts; (iv) Defendants' conduct demonstrates such egregious disregard for federal bankruptcy law that allowing them to participate

as creditors would undermine the integrity of the bankruptcy system; (v) Defendants threatened Plaintiffs and their minor children to coerce estate property; (vi) Defendants engaged in wire fraud to divert estate assets; and (vii) Defendants have refused to return wrongfully seized estate funds despite explicit demands. See In re Rimsat, Ltd., 98 F.3d 956, 962 (7th Cir. 1996) ("A court may bar creditor participation where creditor has engaged in systematic bad faith or fraud upon the court"); In re Haber Oil Co., 12 F.3d 426, 437 (5th Cir. 1994) ("As punishment for creditor egregious conduct, the bankruptcy court possesses the inherent power to . . . disallow the offending creditor claim"); In re Coastal Plains, Inc., 179 F.3d 197, 208 (5th Cir. 1999) (bankruptcy court has equitable power to disallow claims based on bad faith conduct); In re Shapiro, 59 F.3d 1109, 1114 (11th Cir. 1995) (court may disallow claim where creditor engaged in misconduct affecting integrity of bankruptcy process);

HH. Order that any proofs of claim filed by barred Defendants Jennifer Safken, Christopher Safken, Ahuva Gamliel, or Chris Tinsley in the main bankruptcy case be expunged from the claims register, and permanently enjoin these Defendants from filing any claims or participating in any distributions from the bankruptcy estate, whether in their individual capacities or through any entities they control, due to their systematic bad faith, fraud upon the court, and willful violations of the automatic stay that demonstrate they are not creditors entitled to the protections and benefits of federal bankruptcy law. *See 11 U.S.C. § 502(d)* (court may disallow claims); *In re Davis*, 889 F.2d 658, 662 (5th Cir. 1989) (bankruptcy court has inherent equitable power to disallow and expunge claims based on creditor misconduct);

L. Grant such other and further relief as the Court deems just and equitable.

**COUNT IX: CIVIL CONSPIRACY TO VIOLATE AUTOMATIC STAY**

144. Plaintiffs incorporate by reference all preceding paragraphs.

145. Defendants Chris Tinsley, Ahuva Gamliel, Jennifer Safken, Christopher Safken, and their attorneys conspired and agreed to violate the automatic stay by coordinating their actions to continue state court litigation against Plaintiffs despite actual knowledge of Magicsoft's bankruptcy filing.

146. The conspiracy was formed no later than November 2024, when Defendants met via Zoom to coordinate their scheme. During this meeting, Defendants agreed to pursue coordinated litigation strategy across multiple jurisdictions with the common goal of depleting estate assets and obtaining confidential information.

147. Each Defendant performed overt acts in furtherance of the conspiracy, including: (a) filing coordinated lawsuits in multiple jurisdictions; (b) continuing to prosecute these lawsuits after receiving actual notice of the bankruptcy filing; (c) concealing the bankruptcy filing from state courts; (d) directing threats against Plaintiffs to coerce estate assets; (e) engaging in wire fraud to divert estate funds; and (f) conducting systematic campaigns to interfere with Magicsoft's business relationships.

148. The conspiracy caused substantial harm to Plaintiffs and the bankruptcy estate by forcing Plaintiffs to incur defense costs in void state court proceedings, depleting estate assets that would otherwise be available to satisfy indemnification claims, and interfering with the orderly administration of the bankruptcy case.

149. Under federal common law, civil conspiracy to violate federal bankruptcy law is actionable. *See In re Paige*, 610 F.3d 865, 872 (5th Cir. 2010) (recognizing civil conspiracy claims in bankruptcy context); *In re Colony Hill Assocs.*, 111 F.3d 269, 274 (2d Cir. 1997) (conspiracy to defraud estate actionable under bankruptcy law). Plaintiffs are entitled to compensatory and punitive damages for this coordinated violation of federal bankruptcy protections.

**COUNT X: TORTIOUS INTERFERENCE WITH BANKRUPTCY ESTATE**

150. Plaintiffs incorporate by reference all preceding paragraphs.

151. Defendants intentionally interfered with the administration of Magicsoft's bankruptcy estate through their coordinated actions to: (a) deplete estate assets by forcing defense expenditures in void state court proceedings; (b) divert estate funds through wire fraud schemes; (c) misappropriate estate property including confidential business information and customer relationships; and (d) interfere with estate efforts to collect accounts receivable and maintain business operations.

152. Defendants knew of the bankruptcy filing and the automatic stay protections, yet intentionally continued their harmful conduct with the purpose of damaging the estate and preventing the orderly distribution of assets to creditors.

153. Courts recognize that intentional interference with bankruptcy estate administration is actionable. *See In re Ben Cooper, Inc.*, 896 F.2d 1394, 1402 (2d Cir. 1990) (bankruptcy court has authority to address conduct interfering with estate administration); *In re Texaco Inc.*, 92 B.R. 38, 43 (Bankr. S.D.N.Y. 1988) (tortious interference with estate property actionable). The coordinated scheme to deplete estate assets and interfere with estate operations warrants substantial compensatory and punitive damages.

**JURY DEMAND**

Plaintiffs demand a trial by jury on all issues so triable.

**COUNT VI: SYSTEMATIC FRAUD UPON MULTIPLE COURTS**

120. Plaintiffs incorporate by reference all preceding paragraphs.

121. The attorney Defendants' conduct in the state court action constitutes a systematic scheme to defraud multiple courts through deliberate entity confusion, knowing prosecution of legally impossible claims, and calculated concealment of jurisdictional facts.

122. The First Act of Fraud: Suing a Dissolved Entity. The attorney Defendants filed a state court Complaint naming Magicsoft GRP, Inc. as a defendant and alleging it entered into a contract on May 13, 2024. The attorney Defendants attached to this same Complaint the Articles of Dissolution showing Magicsoft GRP, Inc. was dissolved on April 30, 2024, and expressly admitted in paragraph 113 that the entity was dissolved on that date. This knowing prosecution of claims against an entity that lacked capacity to contract on the alleged date constitutes fraud upon the state court.

123. The Second Act of Fraud: Obtaining Default Against a Non-Existent Entity. The attorney Defendants obtained a default judgment against Magicsoft GRP, Inc. despite knowing the entity was dissolved and lacked capacity to be served, appear, or defend. Under Florida law, a dissolved corporation cannot be served with process or defend legal actions. The judgment was obtained through fraud because the attorney Defendants knew the entity could not lawfully defend itself.

124. The Third Act of Fraud: Garnishing a Non-Partys Assets. The attorney Defendants used the void default judgment against Magicsoft GRP, Inc. to garnish bank accounts belonging to Magicsoft Group Inc., a completely different legal entity that was not a party to the state court action. This garnishment constituted conversion of property belonging to a non-party and violated Magicsoft Group Inc. due process rights. The garnishment proves the attorney Defendants knew all along which entity was the actual contracting party with assets.

125. The Fourth Act of Fraud: Concealing the Bankruptcy Filing. After receiving actual notice of Magicsoft Group Inc. bankruptcy filing on August 17, 2025, the attorney Defendants deliberately concealed this information from the state court. Despite mandatory duties under Florida Rule of Professional Conduct 3.3(a)(1) to disclose material facts bearing on subject matter jurisdiction, the attorney Defendants remained silent while the state court issued orders in violation of federal bankruptcy law.

126. The Fifth Act of Fraud: Seeking to Enforce Void Orders. The attorney Defendants now seek to enforce orders that are void under Kalb v. Feuerstein, 308 U.S. 433 (1940), because they were issued during the automatic bankruptcy stay. This attempt to benefit from void orders obtained through their own misconduct compounds the fraud.

127. The Sixth Act of Fraud: Contradictory Position on Bankruptcy Debtor. After garnishing Magicsoft Group Inc. bank accounts, the attorney Defendants now claim in their state court Motion to Determine Inapplicability of Bankruptcy Stay that they have no claims against Magicsoft Group Inc. This contradictory position—seizing an entitys assets while claiming no interest in that entity—demonstrates calculated manipulation to evade bankruptcy protections.

128. This systematic pattern demonstrates fraud perpetrated by officers of the court that defiled both the state court and this Court by using judicial machinery to accomplish ends that the law prohibits. See Cox v. Burke, 706 So. 2d 43, 46 (Fla. 5th DCA 1998).

127A. The Seventh Act of Fraud: Coordinated Enterprise Leadership. Defendant Chris Tinsley, while bound by non-disclosure agreements and fiduciary duties as an independent contractor to Magicsoft, exploited his insider access to orchestrate the entire fraudulent scheme. During the November 2024 coordination meeting, Defendant Tinsley explicitly stated his intent to obtain material evidence from Magicsoft computers to use against the company, demonstrating the premeditated and coordinated nature of the fraud upon both courts.

127B. The Eighth Act of Fraud: Wire Fraud to Deplete Estate Assets. On or about February 20, 2025, after the coordinated scheme was well underway, Defendant Chris Tinsley sent fraudulent wire transfer instructions to at least one customer, directing funds to his personal account rather than to Magicsoft. This act of wire fraud was designed to deplete estate assets while simultaneously concealing the diversion from both the company and the bankruptcy court, constituting additional fraud upon this Court.

127C. The Ninth Act of Fraud: Extortion Through Threats Against Minor Children. In March 2025, Defendant Chris Tinsley made explicit threats against the personal safety of Plaintiffs Gabriel Bar Shany and Shani Bar, and threatened their minor children, demanding confidential business information and unauthorized payments. These threats were designed to coerce the surrender of estate property and confidential information through fear of physical harm, constituting criminal extortion that further defrauds this Court attempting to administer the bankruptcy case.

127D. The Tenth Act of Fraud: Systematic Customer Interference Campaign. Between November 2024 and present, Defendant Chris Tinsley sent emails to approximately 50-60 customers containing confidential company information, with the intent to damage Magicsoft reputation and recruit customers into the coordinated scheme. This systematic interference with estate property (customer relationships) while concealing these actions from this Court constitutes ongoing fraud upon the bankruptcy court.

129. The conduct warrants the most severe sanctions, including dismissal of the state court action with prejudice, substantial monetary sanctions, and referral to The Florida Bar for disciplinary proceedings.

**COUNT VII: WRONGFUL GARNISHMENT AND CONVERSION**

130. Plaintiffs incorporate by reference all preceding paragraphs.

131. The garnishment of Magicsoft Group Inc. bank accounts based on a judgment against a different entity (Magicsoft GRP, Inc.) constituted conversion of property belonging to the bankruptcy estate.

132. Magicsoft Group Inc. was never named as a defendant in the state court action, was never served with process, and was never provided notice or opportunity to be heard regarding the claims or the garnishment of its assets.

133. The garnishment violated Magicsoft Group Inc. due process rights under the Fifth and Fourteenth Amendments to the United States Constitution by depriving it of property without due process of law.

134. The attorney Defendants knew or should have known that garnishing a non-partys assets based on a judgment against a different entity was unlawful. The fact that the attorney Defendants proceeded anyway demonstrates willful misconduct.

135. The wrongfully garnished funds are property of the bankruptcy estate. Under 11 U.S.C. § 542, persons holding property of the estate must deliver such property to the trustee. The attorney Defendants and their clients are obligated to return the wrongfully garnished funds to the estate.

136. The wrongful garnishment caused actual damages to the estate and to Plaintiffs, who hold unsecured indemnification claims. The estate was deprived of funds needed to pay creditors' claims. Plaintiffs recovery under their indemnification rights was reduced by the depletion of estate assets.

137. Plaintiffs are entitled to recover compensatory damages for the harm caused by the wrongful garnishment, including the full amount wrongfully seized plus interest, costs incurred in recovering the funds, and such other damages as may be proven.

136A. The garnishment of a non-party assets violates fundamental due process protections. The Supreme Court has held that "[a] judgment must be directly related to the proceedings which was had, in fact. If there was no service in the action, a judgment rendered therein is not entitled to the full faith and credit which the Constitution and statute of the United States require to be given to a valid judgment." *Pennoyer v. Neff*, 95 U.S. 714, 732 (1877). Courts consistently hold that garnishment of funds belonging to non-parties constitutes conversion. *See Fleet Mortg. Corp. v. Cendant Mobility Servs. Corp.*, 597 F. Supp. 2d 340, 350 (D. Conn. 2009) (conversion when funds garnished from non-party account).

**COUNT VIII: ABUSE OF PROCESS**

138. Plaintiffs incorporate by reference all preceding paragraphs.

139. The attorney Defendants used legal process (the state court default judgment and garnishment) for an improper purpose not intended by law: to seize assets from an entity that was not a party to the judgment and to circumvent that entitys bankruptcy protections.

140. Under Florida law, abuse of process requires: (1) use of legal process; (2) for an ulterior or improper purpose; and (3) damages resulting from the improper use. Rombro v. Wash. Post Co., 444 F.2d 896, 899 (D.C. Cir. 1971).

141. The attorney Defendants deliberately sued a dissolved entity to obtain an uncontested default judgment, then used that judgment to garnish assets of a different entity they knew was the actual party with assets. This use of process was not for the legitimate purpose of collecting a debt owed by the judgment debtor, but rather to seize assets from a non-party.

142. When the actual contracting party sought bankruptcy protection, the attorney Defendants concealed this fact from the state court and continued using state court process to enforce void orders in violation of federal bankruptcy law.

143. The improper use of process caused substantial damages to Plaintiffs and the bankruptcy estate, including depletion of estate assets, defense costs incurred in void proceedings, and interference with orderly bankruptcy administration.

144. Plaintiffs are entitled to compensatory and punitive damages for the abuse of process.

M. Order the return of all funds wrongfully garnished from Magicsoft Group Inc. bank accounts, plus interest from the date of garnishment, on grounds that: (i) the garnishment was based on a judgment against a different entity (Magicsoft GRP, Inc.); (ii) Magicsoft Group Inc. was never a party to the state court action; (iii) the garnishment violated Magicsoft Group Inc. due process rights; (iv) the garnished funds are property of the bankruptcy estate under 11 U.S.C. § 541; and (v) Defendants must deliver estate property under 11 U.S.C. § 542;

N. Declare that all orders issued by the state court in the State Court Action and Gamliel Action after August 17, 2025 are void ab initio under Kalb v. Feuerstein, 308 U.S. 433 (1940), because they were issued during the automatic bankruptcy stay in violation of 11 U.S.C. § 362(a);

O. Declare that the default judgment obtained by Defendants against Magicsoft GRP, Inc. in the state court is void because: (i) the entity was dissolved on April 30, 2024 and lacked capacity to be served or defend; (ii) the judgment was obtained through fraud upon the court; and (iii) the entity lacked capacity to contract on May 13, 2024 as alleged in the state court Complaint;

P. Find that the attorney Defendants committed systematic fraud upon multiple courts through: (i) deliberately suing a dissolved entity while knowing it lacked capacity; (ii) attaching dissolution documents to their own Complaint while alleging impossible contract dates; (iii) garnishing a non-partys assets based on a judgment against a different entity; (iv) concealing the bankruptcy filing from the state court; and (v) seeking to enforce void orders obtained through their misconduct;

Q. Award Plaintiffs damages for conversion of estate property through the wrongful garnishment, including the full amount seized, interest, costs of recovery, and such other damages as may be proven;

R. Award Plaintiffs compensatory and punitive damages for abuse of process arising from Defendants use of state court proceedings to seize assets from non-parties and circumvent bankruptcy protections;

S. Issue an injunction prohibiting Defendants and their attorneys from: (i) enforcing any orders issued in the state court proceedings after August 17, 2025; (ii) taking any action to collect on the void default judgment; (iii) continuing prosecution of the State Court Action or Gamliel Action in violation of the automatic stay; and (iv) engaging in any further attempts to garnish estate property;

T. Order Defendants to file notices in the state court proceedings informing those courts of: (i) the bankruptcy filing; (ii) the automatic stay; (iii) the identity of Magicsoft Group Inc. as the actual contracting party and bankruptcy debtor; (iv) the wrongful garnishment of the bankruptcy debtors assets; and (v) this Courts findings regarding the void orders and fraudulent conduct;

U. Impose sanctions under 11 U.S.C. § 105(a) and this Courts inherent authority sufficient to: (i) compensate Plaintiffs for all injuries caused by Defendants' willful violations and fraudulent conduct; (ii) punish Defendants for their egregious misconduct; (iii) deter similar conduct by other parties; and (iv) vindicate the integrity of the bankruptcy system and judicial process;

V. Find that the attorney Defendants' conduct warrants referral not only to the Florida Bar but also to the United States Trustee for investigation of potential criminal bankruptcy fraud under 18 U.S.C. § 152-157, based on: (i) knowing and fraudulent concealment of property of the estate; (ii) making false oaths or accounts regarding estate property; (iii) withholding documents

and information from the Court; and (iv) using bankruptcy proceedings to further a fraudulent scheme;

W. Award enhanced damages reflecting the aggravated nature of Defendants misconduct, including: (i) multiple separate violations of the automatic stay spanning several months; (ii) violations continuing after actual notice and explicit warnings; (iii) fraud upon multiple courts; (iv) conversion of estate property; (v) abuse of process; and (vi) professional misconduct by licensed attorneys who knew or should have known their conduct was unlawful; and

X. Grant such other and further relief as the Court deems just, equitable, and necessary to: (i) protect the bankruptcy estate; (ii) compensate Plaintiffs for all injuries; (iii) punish and deter egregious misconduct; (iv) vindicate the integrity of the judicial system; and (v) ensure respect for federal bankruptcy law and this Courts jurisdiction.

**SUMMARY OF MOST EGREGIOUS CONDUCT**

This adversary proceeding presents an extraordinary case of coordinated misconduct by multiple defendants and their attorneys that rises far above typical automatic stay violations. The conduct at issue includes:

1. Deliberate Entity Confusion: Defendants sued a dissolved corporation (Magicsoft GRP, Inc.) while knowing their contract was with a different entity (Magicsoft Group Inc., the bankruptcy debtor). Defendants' own Complaint attached the dissolution documents and admitted the dissolution date, yet alleged the dissolved entity contracted thirteen days after dissolution—a chronological and legal impossibility.

**2. Fraudulent Default Judgment:** Defendants obtained a default judgment against an entity that was dissolved and lacked capacity to be served, appear, or defend, in violation of Florida corporate law and basic due process.

**3. Wrongful Garnishment of Non-Party Assets:** Defendants used the void judgment against the dissolved entity to garnish bank accounts belonging to the bankruptcy debtor—a completely different legal entity that was never a party to the state court action. This garnishment proves Defendants always knew which entity was the real party in interest.

**4. Systematic Concealment From Courts:** After receiving actual notice of the bankruptcy filing and automatic stay, attorney Defendants deliberately concealed this information from the state court, causing void orders to issue in violation of federal law.

**5. Continued Violations After Explicit Warnings:** Even after receiving explicit written warnings detailing the automatic stay violations and potential personal liability, Defendants persisted in their unlawful conduct for more than two months.

**6. Contradictory Positions on Bankruptcy Debtor:** After garnishing the bankruptcy debtors assets, Defendants now claim they have no interest in that entity—attempting to benefit from their garnishment while evading bankruptcy jurisdiction.

This pattern of conduct demonstrates willful, coordinated fraud designed to manipulate judicial processes, seize estate property, and circumvent federal bankruptcy protections. The misconduct warrants the maximum sanctions available under law.

96. The first entity is Magicsoft GRP, Inc., a Florida corporation that was dissolved on April 30, 2024, according to Articles of Dissolution that Plaintiffs themselves attached as Exhibit 7 to their State Court Complaint. This entity has been legally dead for over a year and lacks capacity to be served, appear in court, defend lawsuits, or enter into contracts.

97. The second entity is Magicsoft Group Inc., a separate corporation that is the actual contracting party identified in the GP Service Agreement and is the debtor in this bankruptcy case.

98. Defendants knew exactly which entity they were dealing with—their own contract documents prove it. Yet they deliberately sued the dissolved entity (Magicsoft GRP, Inc.) while knowing the actual contracting party was Magicsoft Group Inc. This was not confusion or mistake. Defendants chose to sue a dissolved entity that could not defend itself, knowing they would obtain an uncontested default judgment. This is fraud.

99. This entity confusion was not inadvertent. Plaintiffs State Court Complaint contains an internal chronological impossibility that proves knowledge: Plaintiffs attached Articles of Dissolution showing Magicsoft GRP, Inc. was dissolved on April 30, 2024, admitted this dissolution date in paragraph 113, yet alleged that this same dissolved entity entered into a contract with them on May 13, 2024—thirteen days after dissolution.

100. Under Florida law (Fla. Stat. § 607.1405), a dissolved corporation lacks legal capacity to enter into new contracts. The entity Plaintiffs sued could not have contracted on the date Plaintiffs allege because it did not legally exist.

H. The Wrongful Garnishment Revealing Deliberate Entity Confusion

101. The fraudulent nature of Defendants' conduct in the state court action is demonstrated by their garnishment activities, which reveal actual knowledge of the entity confusion and deliberate strategy to exploit it.

102. After obtaining a default judgment against the dissolved entity Magicsoft GRP, Inc. in state court, Defendants then garnished bank accounts belonging to Magicsoft Group Inc.—the bankruptcy debtor—a completely different legal entity that was never a party to the state court judgment. This garnishment exposes the fraud: Defendants knew all along which entity held the assets, but they sued the wrong entity to obtain an uncontested judgment, then seized assets from the entity they knew was the real party. This is deliberate conversion of bankruptcy estate property through fraudulent process.

103. This garnishment of a non-partys assets reveals multiple levels of misconduct. First, it demonstrates that Defendants knew all along that Magicsoft Group Inc., not Magicsoft GRP, Inc., was the entity with assets and the actual contracting party. Second, it constitutes conversion of property belonging to an entity against which Defendants had no judgment. Third, it violated Magicsoft Group Inc. due process rights by seizing its assets without ever naming it as a defendant or providing it notice and opportunity to be heard.

104. The garnishment occurred before the August 17, 2025 bankruptcy filing but is critical to understanding the fraudulent scheme. Defendants deliberately sued a dissolved shell entity to obtain an uncontested default judgment, then used that void judgment to seize assets from the actual operating entity they knew was the real contracting party.

105. Most remarkably, after garnishing Magicsoft Group Inc. bank accounts and seizing its assets, Defendants now claim in their state court Motion to Determine Inapplicability of Bankruptcy Stay that they have no claims against Magicsoft Group Inc. and assert the

bankruptcy stay does not apply to them. This contradictory position—garnishing an entitys assets while simultaneously claiming no claims against that entity—reveals calculated manipulation of the court system.

I. Fraud Upon the Courts Through Concealment of Bankruptcy

106. After Magicsoft Group Inc. filed for bankruptcy protection on August 17, 2025, the attorney Defendants engaged in additional misconduct by concealing the bankruptcy from the state court.

107. Plaintiffs received actual notice of the bankruptcy filing through formal Notice of Bankruptcy Filing served by Individual Defendants in the state court action. This notice expressly alerted the state court and all parties to: (a) the bankruptcy petition; (b) the identity of the debtor as Magicsoft Group Inc.; (c) the automatic stay under 11 U.S.C. § 362(a); and (d) the stays application to the state court proceedings.

108. Despite receiving actual notice of the bankruptcy, the attorney Defendants deliberately concealed this information from the state court, continuing to prosecute discovery, file motions, and seek relief without disclosing the bankruptcy or the automatic stay. This silence breached their mandatory duty of candor to the tribunal under Florida Rule of Professional Conduct 3.3(a)(1), which requires lawyers to disclose material facts when disclosure is necessary to avoid assisting a client's criminal or fraudulent act. The attorney

Defendants knew the state court lacked jurisdiction and that the automatic stay prohibited all proceedings, yet they concealed these facts to continue extracting estate resources.

109. This silence breached the attorney Defendants mandatory duty of candor to the tribunal under Florida Rule of Professional Conduct 3.3(a)(1), which requires lawyers to disclose material facts bearing on subject matter jurisdiction.

110. Because of the attorney Defendants failure to disclose, the state court—acting in good faith and without knowledge of the bankruptcy—issued various orders after August 17, 2025. These orders are void ab initio under Kalb v. Feuerstein, 308 U.S. 433 (1940), because they were issued in violation of the automatic bankruptcy stay.

111. The attorney Defendants now seek to enforce these void orders against Plaintiffs in the state court proceedings, compounding their violations of federal bankruptcy law and their fraud upon both courts.

J. The Systematic Pattern of Fraudulent Conduct

112. The complete pattern of Defendants' conduct reveals a sophisticated fraud scheme designed to circumvent Florida corporate law and federal bankruptcy protections through deliberate manipulation of judicial processes. Each step was calculated, each deception intentional.

113. First, Defendants sued a dissolved entity (Magicsoft GRP, Inc.) despite having actual knowledge through their own contract documents that this was not the contracting party and that it had been dissolved before the alleged contract date.

114. Second, Defendants provided this Court and the state court with documentary evidence of the dissolution (the Articles of Dissolution attached as Exhibit 7) while simultaneously prosecuting claims that depended on that dissolved entity having capacity to contract after dissolution.

115. Third, Defendants obtained a default judgment against the dissolved entity, which lacked capacity to be served, appear, or defend.

116. Fourth, Defendants used this void judgment to garnish assets belonging to a different entity (Magicsoft Group Inc.) that was not a party to the judgment, demonstrating actual knowledge of which entity had assets and contractual obligations.

117. Fifth, when the actual contracting party (Magicsoft Group Inc.) sought bankruptcy protection, Defendants concealed this fact from the state court and continued prosecution in violation of the automatic stay.

118. Sixth, Defendants now claim they have no interest in the bankruptcy debtor (Magicsoft Group Inc.) despite having garnished its bank accounts and despite their contract being with that entity.

119. This pattern of conduct demonstrates willful, coordinated fraud designed to obtain judgments through deception, seize assets from non-parties, and evade bankruptcy protections—all while manipulating multiple courts through selective disclosure and strategic silence.

Dated: October 27, 2025

Respectfully submitted,

/s/ Gabriel Bar Shany

Gabriel Bar Shany

323 Sunny Isles Blvd

Sunny Isles Beach, FL 33160

Email: Gabe@dealestate.ai

/s/ Shani Bar

Shani Bar

323 Sunny Isles Blvd

Sunny Isles Beach, FL 33160

Email: Shany@dealestate.ai

/s/ Bella Cohen

Bella Cohen

323 Sunny Isles Blvd

Sunny Isles Beach, FL 33160

Email: Bella@dealestate.ai

/s/ Aron Berlin

Aron Berlin

Petitioner Creditor

In re: Magicsoft Group, Inc. Bankruptcy

Case No. 25-35888-KYP

4118 14th Ave

Brooklyn NY 11219

Berlinahron@gmail.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------x

In re:

MAGICSOFT GROUP, INC.,

Case No. 25-35888-KYP
Chapter 7

Debtor.

-----------------------------------------------------------x

GABRIEL BAR SHANY,
SHANI BAR,
BELLA COHEN,
ARON BERLIN, and

Adversary Proceeding No.

Plaintiffs,

v.

JENNIFER SAFKEN and
CHRISTOPHER SAFKEN,
EMMA A. PASCUAL, ESQ.,
JOHN R. SUTTON, ESQ.,
SUTTON POMARES LAW GROUP, P.A.,
CHRIS TINSLEY,
AHUVA GAMLIEL,
JOSHUA H. EGGNATZ, ESQ.,
MICHAEL J. PASCUCCI, ESQ., and
EGGNATZ | PASCUCCI,

Defendants.

-----------------------------------------------------------x

**TABLE OF CONTENTS AND EXHIBIT LIST**

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT 2
NATURE OF THE ACTION 4
JURISDICTION AND VENUE 5
PARTIES 6
A. Plaintiffs 6
B. Defendants 7
STATEMENT OF FACTS 9
A. Plaintiffs' Relationship with Magicsoft and Contractual Indemnification Rights 9
B. The State Court Actions Against Plaintiffs 10
C. Coordinated Enterprise and Threats Against Plaintiffs 11
D. Magicsoft's Bankruptcy Filing and the Automatic Stay 18
E. Defendants Received Actual Notice of the Bankruptcy Filing 21
F. Defendants Willful Violations of the Automatic Stay 21
G. Harm to Plaintiffs and the Bankruptcy Estate 24
H. The Wrongful Garnishment Revealing Deliberate Entity Confusion 56
I. Fraud Upon the Courts Through Concealment of Bankruptcy 58
J. The Systematic Pattern of Fraudulent Conduct 59
CLAIMS FOR RELIEF 25
COUNT I: Willful Violation of the Automatic Stay (11 U.S.C. § 362(k)) 25
COUNT II: Civil Contempt for Stay Violations (11 U.S.C. § 105(a)) 28
COUNT III: Fraud Upon the Court 30
COUNT IV: Professional Misconduct and Violation of Florida Rules 32
COUNT V: Declaratory Relief (28 U.S.C. § 2201) 33
COUNT VI: Systematic Fraud Upon Multiple Courts 43
COUNT VII: Wrongful Garnishment and Conversion 47
COUNT VIII: Abuse of Process 49
COUNT IX: Civil Conspiracy to Violate Automatic Stay 41
COUNT X: Tortious Interference with Bankruptcy Estate 42
PRAYER FOR RELIEF 34
JURY DEMAND 43
SUMMARY OF MOST EGREGIOUS CONDUCT 54

## EXHIBIT LIST

The following exhibits are referenced in or attached to the Complaint for Violation of Automatic Stay, Declaratory Relief, and Sanctions:

**Exhibit 1:** Independent Contractor Agreements between Plaintiffs and Magicsoft Group Inc. (containing indemnification provisions)

**Exhibit 2:** Complaint in Case No. 2025-020063-CA-01 (State Court Action), Circuit Court, Eleventh Judicial Circuit, Miami-Dade County, Florida

**Exhibit 3:** Complaint in Case No. 2025-004959-CA-01 (Gamliel Action), Circuit Court, Eleventh Judicial Circuit, Miami-Dade County, Florida

**Exhibit 4:** Involuntary Chapter 7 Bankruptcy Petition, Case No. 25-35888-KYP, filed August 17, 2025

**Exhibit 5:** Notice of Bankruptcy Filing and Automatic Stay served on Defendants

**Exhibit 6:** Articles of Dissolution for Magicsoft GRP, Inc. (dissolved April 30, 2024)

**Exhibit 7:** Motion for Default Judgment filed by Gamliel attorney Defendants (filed September 29, 2025)

**Exhibit 8:** Notice of Hearing for Renewed Motion for Default filed by John R. Sutton (filed October 16, 2025, scheduling hearing for October 28, 2025)

**Exhibit 9:** Email from John R. Sutton to Gabriel Bar Shany dated October 17, 2025, acknowledging bankruptcy filing

**Exhibit 10:** Response from Gabriel Bar Shany to John R. Sutton warning of automatic stay violations and personal liability

**Exhibit 11:** Default Judgment obtained against Magicsoft GRP, Inc. in State Court Action

**Exhibit 12:** Garnishment documents showing seizure of Magicsoft Group Inc. bank accounts based on judgment against Magicsoft GRP, Inc.

**Exhibit 13:** GP Service Agreement identifying Magicsoft Group Inc. as contracting party

**Exhibit 14:** Correspondence from Aron Berlin to Emma A. Pascual demanding return of wrongfully garnished estate funds

**Exhibit 15:** Complaint in Gabriel Bar Shany et al v. Chris Tinsley et al, Case No. 1:25-cv-08040-LTS (S.D.N.Y.) (Civil RICO Action)

**Exhibit 16:** Motion to Determine Inapplicability of Bankruptcy Stay filed by Defendants in State Court

*Note: Additional exhibits may be added as discovery proceeds and as necessary to support the claims and relief requested in this adversary proceeding.*